## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | | **CRIMINAL CASE NO.** |
| **v.** | : | |
| | | **1:19-CR-297-ELR-JSA** |
| **PETER TARANTINO,** | : | |
| | | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION
## ON A MOTION TO SEVER DEFENDANT

Defendant Tarantino ("Tarantino"), who is charged in one of three separate conspiracies with Defendants Todd and Julie Chrisley (the "Chrisleys"), moves for his trial to be severed from that of his Co-Defendants. *See* Motion [38]. Although severance of defendants indicted together is unusual, this case presents unique concerns as to potential prejudice to Tarantino, for the reasons described below. Thus, the Court **RECOMMENDS** that Tarantino's Motion to Sever Defendant [38] be **GRANTED**.

## DISCUSSION

"Defendants who are indicted together are usually tried together … [a]nd [t]hat rule is even more pronounced in conspiracy cases." *United States v. Mosquera*, 886 F.3d 1032 (11th Cir. 2018) (internal citations and quotations omitted). Nevertheless, there are circumstances in which a severance pursuant to Rule 14, Fed.R.Crim.P. is appropriate. See Fed.R.Crim.P. 14(a) (allowing

severance "if the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant.")

The Court must grant a severance if (1) "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants," or (2) if a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) (*citing Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

There are four reasons generally advanced for a severance of defendants: (1) Where defendants rely on mutually antagonistic defenses; (2) where one defendant would exculpate the moving defendant in a separate trial, but will not testify in a joint trial setting; (3) where inculpatory evidence will be admitted against one defendant that is not admissible against the other; (4) where cumulative and prejudicial "spill over" effect may prevent the jury from sifting through the evidence to make an individualized determination as to each defendant. *Id*. at 1041-42. In the end, the Court must "balance the possibility of prejudice to the defendant against the public interest in judicial efficiency and economy." *United States v. Feldman*, 936 F.3d 1288, 1297 (11th Cir. 2019).

Compelling prejudice warranting severance is shown when "the jury [would be] unable to sift through the evidence and make an individualized determination as to each defendant." *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir.

1998). The Court considers the circumstances of each case, and the presumption that the jury will be able to follow the Court's instructions. *United States v. Blasingame*, 219 Fed.App'x 934, 948 (11th Cir. 2007).

Defendant Tarantino does not specifically argue that the Defendants would present mutually antagonistic defenses or that he would be exonerated by one or both Chrisley Defendants if he could call them as witnesses in a separate trial. Tarantino's arguments, rather, sound in the third and fourth severance categories discussed above, that is, the risk of prejudicial overspill and/or admission of evidence that would be inadmissible against himself.

The Court summarizes the Indictment in somewhat more detail in the Court's contemporaneously-filed Order denying the Defendants' Motions for A Bill of Particulars, which summary is incorporated here. In short, the Indictment charges that the Chrisleys engaged in three separate schemes covering the 2007-2018 timeframe. Tarantino, the Chrisleys' accountant during part of this time, was involved in only one of those schemes, for part of the relevant time. The tax evasion scheme in which Tarantino allegedly participated does not arise out of the same series of acts or transactions as the separate bank fraud and wire schemes engaged in by the Chrisleys in earlier years, which are included in this sweeping Indictment.

The Court is mindful that a disparity in the evidence applicable to various defendants does not itself constitute compelling prejudice warranting severance of any individual defendant. *See United States v. Cassano*, 132 F.3d 646 (11th Cir. 1998). Rather, the Court's concern here is more specific. There is concrete reason to worry that certain of the evidence admissible only against the Chrisleys and pertaining only to the unrelated prior fraud schemes not involving Tarantino could prejudice Tarantino.

According to the Indictment, the Chrisleys made statements in connection with their prior fraud schemes as their desire to hire "crooked" accountants to accomplish their criminal goals. Specifically, in discussing with an unindicted conspirator the need to submit false financial information to a bank in 2008, Defendant Todd Chrisley allegedly wrote an email stating, "giving me an excuse as to why you can not [sic] figure this out does not move it off of your plate, this is not what we discussed, passing it back and forth is not getting the results requested, if you do not know how to do this then find a crooked accountant to do it. Ask [name redacted] who her guy uses for his crooked shit." Indictment ¶ 19.

The Government does not allege that Tarantino was the "crooked accountant" referred to in this email and does not allege that Tarantino had any involvement with the Chrisleys for several more years after that email was sent. But Tarantino became the Chrisleys' accountant in the 2015-2018 period and in

that capacity allegedly assisted them in tax evasion, filing of false returns, defrauding and making false statements to the IRS, and the like. Having heard evidence that the Chrisleys intentionally look for "crooked accountant[s]" to assist with their frauds, the jury may naturally assume that the Chrisleys intentionally chose to hire Tarantino with that same criteria in mind. In other words, the jury may infer from this email that the Chrisleys hired Tarantino because they had some reason to believe that he would be "crooked." This inference would be a very unfair to Tarantino, as it would be based on an email between two participants in an unrelated conspiracy prior to his own alleged involvement in any conspiracy, that would almost certainly not be admissible against him.

Moreover, although the risk of prejudice would exist regardless, the Court notes that is not clear that the unnamed "crooked accountant" would be definitively identified at trial as not being Tarantino. Indeed, it is not clear as to whether the Government even knows who Chrisley was referring to as the "crooked accountant" in that email. If the identity of this unnamed "crooked accountant" is left uncertain at trial, the jury might naturally speculate that it could have been Tarantino after all. In other words, there is a real risk that the jury could assume that Chrisley's request for a reference for a crooked accountant—"ask [redacted] who her guy uses for his crooked shit"—may have been how the Chrisleys shortly thereafter learned of and hired Tarantino.

While the undersigned's recommendation for severance is not specifically based on the overall disparity of the evidence, it is relevant in balancing the applicable factors that Tarantino is not "in the same league" as the Chrisleys in terms of the extent of the allegedly illegal conduct. *United States v. Pedrick*, 181 F.3d 1264 (11th Cir. 1999) (affirming district court's grant of a new trial for a defendant prejudiced by the fact that the vast majority of the evidence applied only to a co-defendant with whom the moving defendant was "not in the same league"). Here, the significant majority of the charges and allegedly fraudulent conduct, and the most baldly egregious of that conduct including the forging or fabricating of bank statements and other documents, is directed solely at the Chrisleys. While a jury might ordinarily be able to sort through an unequal quantum of evidence, the scale is tipped in favor of severance when some of that evidence unfairly prejudices one of the defendants, as the Court finds to be the case here. The Court thus recommends severance to prophylactically protect against this substantial risk.[1]

---

[1] In making this recommendation, the Court has considered the inefficiencies involved in a severance, including the need for two separate juries. It bears noting, however, that it would be substantially more inefficient to have to order a new trial after-the-fact if the evidence at a joint trial is deemed to be prejudicial to one of the defendants. Thus, the Court's recommendation is in many ways prophylactic, to prevent a potential unfairness to Tarantino and the even greater burden on the Court and trial system should a new trial be deemed warranted in the future.

## CONCLUSION

The Court **RECOMMENDS** that Defendant Tarantino's Motion to Sever

Defendant [38] be **GRANTED**.

**IT IS SO RECOMMENDED** this 30th day of August, 2021.

_____

**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**