IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>PETER TARANTINO | Criminal Action No.<br><br>1:19-CR-297-ELR-JSA |

**United States' Sentencing Memorandum Regarding Defendant Peter Tarantino**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Thomas J. Krepp and Annalise K. Peters, Assistant United States Attorneys for the Northern District of Georgia, files this Sentencing Memorandum in advance of the sentencing of Defendant Peter Tarantino.

## I.  BACKGROUND

### 1. Procedural History

In 2019, the defendants Todd Chrisley, Julie Chrisley, and Peter Tarantino were indicted by a federal grand jury for a variety of crimes. (Doc 1). The grand jury returned a superseding indictment in February 2022. (Doc. 130). After a three-week trial in May and June 2022, the defendants were convicted of all charges. Tarantino was convicted of three counts of the superseding indictment: one count of conspiracy to defraud the IRS (18 U.S.C. § 371) and two counts of willfully filing false tax returns (26 U.S.C. § 7206(2)).

1

### 2. The Presentence Investigation Report

U.S. Probation prepared a Presentence Investigation Report ("PSR") in advance of sentencing. The parties agree with Probation's calculations with the exception of whether the two-level enhancement for abusing a special skill should be added to the conspiracy charge. However, this is a technical issue that does not impact the ultimate Guidelines range.[1] Regardless of the Court's ruling on that issue, the parties agree that Tarantino's advisory Guidelines range is 41-51 months' imprisonment based on a Total Offense Level of 22 and Criminal History Category I.

## II.  SENTENCING GUIDELINES

### 1. Tarantino should receive a two-level enhancement because he used a special skill in a manner that significantly facilitated the commission or concealment of the tax offenses.

Section 3B1.3 provides for a two-level enhancement "[i]f the defendant … used a special skill[] in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The commentary defines a "special skill" as one "not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, *accountants*, chemists, and demolition experts." *Id.* cmt. n.4 (emphasis added). "If an 'average person off the street' does not possess the skill, then the skill is considered 'special' for the purposes of applying the

---

[1] An additional minor point that does not impact the Guidelines range is that the PSR does not calculate the offense level for each offense separately before applying the grouping rules. *See* § 1B1.1.

enhancement." *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1219 (11th Cir. 2010) (quoting *United States v. Calderon*, 127 F.3d 1314, 1339 (11th Cir. 1997)). A special skill does not require formal education, *see United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998), and "may be obtained through life experience and self study." *United States v. Batista De La Cruz*, 460 F.3d 466, 468 (3d Cir. 2006). The guideline applies to those "who abuse . . . .their special skills" and that "such persons generally are viewed as more culpable." U.S.S.G. § 3B1.3, cmt. (backg'd). "The legal question is not whether the task could be performed by a person without special skills, but whether the defendant's special skills aided him in performing the task." *United States v. Covey*, 232 F.3d 641, 647 (8th Cir. 2000). "There is no requirement in the guidelines that the enhancement for use of special skills be used only for complex tasks." *Id.*

Courts routinely apply the special skill enhancement pursuant to § 3B1.3 where the defendant is an accountant and used his accounting or tax preparation skills to facilitate the commission of the offense.  For instance, in *United States v. Antonaras*, 627 F. App'x 819, 822 (11th Cir. 2015), the Eleventh Circuit affirmed the application of the special skills enhancement where the defendant "used his skills as an accountant to prepare false tax returns" and other tax documents in connection with fraudulent loan applications. Similarly, in *United States v. Alejandrez*, 701 F. App'x 789, 790-91 (11th Cir. 2017), the defendant was "a professional tax preparer and bookkeeper [and] filed fraudulent claims on behalf of herself and others … relating to the Deepwater Horizon oil rig explosion and oil spill." In affirming the application of the special skills enhancement, the

3

Eleventh Circuit explained that the defendant "possessed tax preparation skills beyond those of the average person and [] used those skills in an attempt to commit and conceal her fraud offense." *Id.*

In *United States v. Hollender*, 85 F. App'x 787, 790 (2d Cir. 2004), the defendant, "a self-taught tax preparer who [was] authorized by the IRS to e-file other individual's tax returns," prepared and filed false tax returns in a tax fraud scheme. When interviewed by an IRS-CI Special Agent, he "gave false answers in response to inquiries regarding his tax preparation business." *Id.* The Second Circuit easily affirmed the application of the special skill enhancement. Likewise, in *United States v. Noah*, 130 F.3d 490, 500 (1st Cir. 1997), the First Circuit found that the sentencing court properly applied the special skills enhancement where the defendant was a professional tax preparer who had fraudulently filed tax returns online. The Court found that the enhancement was "especially appropriate" in that case because "the IRS authorized only certain individuals—approved electronic return originators—to submit tax returns by computer," meaning that the defendant's skill were "special in the sense that it was not enjoyed by the populace at large." *Id.* *See also Covey*, 232 F.3d at 647 (affirming enhancement application where the defendant was a CPA and used those skills to effectuate a money laundering scheme); *United States v. Fritzson*, 979 F.2d 21, 22 (2d Cir. 1992) (affirming enhancement application where the defendant was an accountant who prepared and filed false tax returns, finding that he "possessed a special skill that increased his chance of succeeding on the fraudulent refund claims").

In this case, for the Guidelines calculation for conspiracy to defraud the IRS, Tarantino should receive the two-level enhancement pursuant to § 3B1.3 because his skills as a tax preparer and registered IRS e-filer "significantly facilitated the commission [and] concealment of the offense." U.S.S.G. § 3B1.3. Like the defendants in *Antonaras*, *Hollender*, *Noah*, and *Fritzson*, Tarantino used his IRS-assigned electronic filing identification number (EFIN) to file false tax returns. Tarantino filed two corporate returns for 7C's Productions that falsely showed that the company made no money in 2015 and 2016. (Gov. Exs. 4, 6; *see also* Doc. 130 at ¶ 44). Additionally, acting as the Chrisleys' power of attorney, Tarantino lied to and misled multiple IRS revenue officers who were attempting to collect the Chrisleys' delinquent taxes.  And like the defendant in *Hollender*, Tarantino lied to an IRS-CI special agent when interviewed during the criminal tax investigation. (Gov. Ex. 1102). The enhancement applies because the unrefuted evidence at trial showed that Tarantino used his accounting and tax preparer skills to facilitate and conceal the conspiracy to defraud the IRS.

### III.   SECTION 3553(A) ARGUMENT

Peter Tarantino was not the leader of Todd and Julie Chrisley's sweeping, lengthy fraud schemes, nor was he making millions of dollars in profits from their fraud schemes. Nevertheless, he willingly joined the Chrisleys' criminal conspiracy to defraud the IRS and helped them hide their money and thwart the IRS's efforts to collect taxes. Tarantino played a key role in helping the Chrisleys commit tax evasion, particularly as their accountant and power of attorney with

the IRS. As set forth below, a substantial period of incarceration is necessary to deter other accountants from helping their clients cheat the tax system.

The sentencing court's "task is to impose a sentence that will adequately (1) 'reflect the seriousness of the offense,' (2) 'promote respect for the law,' (3) 'provide just punishment,' (4) 'afford adequate deterrence,' (5) 'protect the public from further crimes of the defendant,' and (6) provide the defendant with any needed training and treatment in the most effective manner. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1253–54 (11th Cir. 2015) (citing 18 U.S.C. § 3553(a)(2)). "The task is a holistic endeavor that requires the district court to consider a variety of factors: (1) the nature and circumstances of the offense, (2) the defendant's history and characteristics, (3) the kinds of sentences available, (4) the applicable sentencing guidelines range, (5) pertinent policy statements of the Sentencing Commission, (5) the need to provide restitution to any victims, and (6) the need to avoid unwarranted sentencing disparities." *Id.* at 1254 (citing 18 U.S.C. § 3553(a)).

Tarantino is a white-collar professional with no criminal history, but that alone does not merit special consideration when crafting an appropriate sentence. The Eleventh Circuit has explicitly instructed sentencing judges not to give a "sentencing discount" because of a white-collar professional's economic or social status. *See United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) (discussing a case where "the Sixth Circuit flatly rejected a district court's reliance on the defendant's 'chosen profession and status in the community,' holding that such factors were 'decidedly inappropriate to form the basis of such a large downward variance.'" *United States v. Peppel*, 707 F.3d 627, 641 (6th Cir.

6

2013)). As the Eleventh Circuit instructed in *Kuhlman*, "we encourage our district court colleagues to keep in mind that

> [b]usiness criminals are not to be treated more leniently than members of the 'criminal class' just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity. It is natural for judges, drawn as they (as we) are from the middle or upper-middle class, to sympathize with criminals drawn from the same class. But in this instance we must fight our nature. *Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.*

*Id.* at 1329–30 (quoting *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) (emphasis added). Nor should Tarantino be able to point to the collateral consequences of his conviction to argue that he has already been "punished enough." *See United States v. Musgrave*, 761 F.3d 602, 608–09 (6th Cir. 2014) (impermissible for the district court to rely heavily on the fact that the defendant had already "been punished extraordinarily" through years of legal process, the loss of his CPA license, and his felony conviction).

Tarantino repeatedly engaged in serious criminal conduct to help his clients further their tax crimes and defraud the IRS. Acting as power of attorney for the Chrisleys, Tarantino repeatedly lied to IRS Revenue Officers, third parties, and even the assigned case agents about the Chrisleys' taxes and assets. He lied to multiple, hardworking IRS Revenue Officers who were trying to do their job to find and collect the Chrisleys' delinquent taxes. Tarantino falsely claimed to one Revenue Officer that Julie Chrisley had no interest in 7C's Productions and that the Chrisleys' daughter owned it. (Tr. at 786). He also falsely told another Revenue Officer that he didn't know where the Chrisleys banked, even though

he had the bank login credentials at that time. (Tr. at 645, 752-53; Gov. Ex. 668). All the while, Tarantino dutifully reported his obstructive conduct to the Chrisleys. For instance, Tarantino once emailed the Chrisleys that "[t]he agent also asked me specific questions about your current living arrangements, et cetera. I avoided answering them."(Gov. Ex. 748). Tarantino, knowing that his clients had not filed their tax returns, repeatedly sent copies of tax returns to banks and other third parties to give the false impression that the Chrisleys had filed and paid. (Tr. at 645-51; Gov. Exs. 500, 507, 509, 510, 511). And when he was finally confronted by the assigned FBI and IRS-CI case agents, he falsely claimed to not know how Todd Chrisley earned his money. (Gov. Ex. 1102). Each one of these actions was a crime, and they were part of a coordinated effort by a trained accountant to help his clients get away with tax fraud. Tarantino used his training and expertise to help his clients cheat the system.

It is important that the imposed sentence reflect the seriousness of his criminal conduct, promote respect for the law, and provide just punishment. *See United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). Similarly, the Court must consider "the need to avoid unwarranted sentence disparities between defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This provision "is focused primarily on nationwide sentencing disparities." *United States v. Ronga*, 682 F. App'x 849, 859 (11th Cir. 2017) (citation omitted). "The focus on nationwide disparities does not mean, of course, that sentences imposed in this circuit are subject to a 'national grade curve.'" *Id.* (quoting *United States v. Hill*, 643 F.3d 807, 885 (11th Cir. 2011)).  But the types and lengths of sentences imposed nationally for defendants convicted

of similar offenses is informative in determining whether a particular sentence would or would not result in an unwarranted sentencing disparity.

The Sentencing Commission's recent report on tax fraud offenses noted that in 2021, the median loss amount for tax offenses was $278,325, and less than 12% of all tax-related crimes involved a loss amount greater than $1.5 million.[2] The Sentencing Commission also reported that the average sentence imposed on tax-related offenders last year was 14 months' imprisonment. Here, the tax loss is more than $1.4 million, dwarfing the national median and putting this case in the top tier of tax fraud offenses. A substantial custodial sentence is essential to avoid unwarranted sentencing disparities between Tarantino and other tax professionals who have been sentenced to federal prison for engaging in similar conduct.

General deterrence is a paramount concern given Tarantino's role as a trained accountant. "Most income tax evasion is undiscovered. To be effective as general deterrence, punishments should lead entrepreneurs considering tax evasion to calculate that they will be punished by incarceration and suffer substantial financial penalties if their cheating is discovered." *United States v. Gorodetsky*, 288 F.R.D. 248, 249 (E.D.N.Y. 2013). "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" *Martin*, 455 F.3d at 1240 (citation omitted). As the Sentencing Commission has explained,

---

[2] *See* United States Sentencing Commission, *Quick Facts: Tax Fraud Offenses*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Tax_Fraud_FY21.pdf (last visited Nov. 14, 2022).

> [b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would be violators.

U.S.S.G. Ch. 2, Part T, intro. cmt. "Studies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect." Joshua D. Blank, In Defense of Individual Tax Privacy, 61 EMORY L.J. 265, 321 (2011-2012). For instance, one study found that "compared to personal conversations about tax audits with friends and associates, individuals are more likely to be deterred by examples of tax enforcement reported by the media 'because the media tend[] to focus on cases where taxpayers go to prison or pay large fine.'" *Id.* (citation omitted).

Other accountants must be put on notice that there are serious consequences for helping clients get away with tax crimes. The fact that the clients are the ones who stand to financially benefit the most does not give accountants free reign to help those clients get away with fraud and profit along the way. The prison sentence imposed for Tarantino must send a message to other accountants and tax professionals that helping commit tax fraud and filing false tax returns is serious criminal conduct that won't be swept aside or discounted.

## IV.  CONCLUSION

For the reasons above and the evidence that will be presented at sentencing, the United States respectfully requests that the Court find that the above-listed Guidelines enhancement applies to Defendant Peter Tarantino and consider the above-listed arguments and evidence when imposing a fair and reasonable sentence under 18 U.S.C. § 3553(a).

This 14th day of November, 2022.

                                              Respectfully submitted,

                                              RYAN K. BUCHANAN
                                              *United States Attorney*

                                              /S/  THOMAS J. KREPP
                                                   *Assistant United States Attorney*
                                              Georgia Bar No. 346781

                                              /s/ ANNALISE K. PETERS
                                                   *Assistant United States Attorney*
                                              Georgia Bar No. 550845

## CERTIFICATE OF SERVICE

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

November 14, 2022

/s/ THOMAS J. KREPP

THOMAS J. KREPP

*Assistant United States Attorney*